**LEVI & KORSINSKY, LLP**
1 | David E. Bower, Esq.   SBN 119546
600 Corporate Pointe, Suite 1170
2 | Culver City, CA  90230-7600
dblaw@mindspring.com
3 | **LEVI & KORSINSKY, LLP**
4 | Joseph Levi, Esq.
Juan E. Monteverde, Esq.
5 | 30 Broad Street, 15th Floor
New York, New York 10004
6 | Tel:  212-363-7500
Fax: 212-363-7171

7 | Attorneys for Plaintiffs

8

IN THE UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11 | PATRICIA L. BRUCE and KENNETH
DONAHUE, individually and on behalf of all
12 | others similarly situated,

13 |                                     Plaintiffs,

14 | v.

15

16 | H.   FREDERICK   CHRISTIE,   MARK
SWATEK, BRUCE EDWARDS, KIMBERLY
17 | ALEXY,   DONOVAN   HUENNEKENS,
MAUREEN KINDEL, RICHARD NEWMAN,
18 | LINDA   GRIEGO,   WILLIAM   JONES,
THOMAS IINO, SOUTHWEST WATER
19 | COMPANY,           SW      MERGER
ACQUISITION CORP., and SW MERGER
20 | SUB CORP.,

21 |                                   Defendants.

**Case No: CV 10-1923-JFW
(VBKx)**

**SECOND AMENDED CLASS
ACTION COMPLAINT**

22

23

24 |       Plaintiffs, by their attorneys, allege upon information and belief, except for their own acts,

25 | which are alleged on knowledge, as follows:

26 |       1.       Plaintiffs bring this action on behalf of the public stockholders of SouthWest Water

27 | Company ("SouthWest Water" or the "Company") against SouthWest Water and its Board of

28

- 1 -

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

Directors seeking equitable relief for their violations of Rule 14a-9(a) promulgated under the Securities Exchange Act of 1934 ("Rule 14a-9"), breaches of fiduciary duty and other violations of state law arising out of their attempt to sell the Company to Defendants SW Merger Acquisition Corp. and SW Merger Sub Corp. (collectively the "Buyers") (entities controlled by institutional investors advised by J.P. Morgan Asset Management and Water Asset Management, L.L.C.) by means of an unfair process and for an unfair price of $11 cash for each share of SouthWest Water common stock (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $275 million.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Rule 14a-9. This court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

3.      Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the plaintiff and the defendants. *See* 28 U.S.C. § 1332.  As described below, Plaintiffs are residents of South Carolina and Oregon, and no Defendants are citizens of either state. In this action, Plaintiffs seek to enjoin a transaction valued at approximately $275 million and accordingly the amount in controversy requirement is met.

4.      Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District.  In addition, SouthWest Water maintains its principal executive offices in California.

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

# PARTIES

5.     Plaintiff Patricia L. Bruce, a citizen of South Carolina, and Kenneth Donahue, a citizen of Oregon, (collectively "Plaintiffs") are and have been at all relevant times the owner of shares of common stock of SouthWest Water.

6.     SouthWest Water is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal corporate offices at One Wilshire Building, 624 South Grand Avenue, Suite 2900, Los Angeles, California 90017, and provides water and wastewater related services principally in the United States. The company offers operations, maintenance, and management services, including water production, treatment, and distribution, wastewater collection and treatment, customer services, and utility infrastructure construction management.

7.     Defendant H. Frederick Christie ("Christie") has been the Chairman of the Board of the Company since 2009 and a director of the Company since 1996.  He is a citizen of the State of California.

8.     Defendant Mark Swatek ("Swatek") has been Chief Executive Officer and a director of the Company since 2006 and President of the Company since 2009. He is a citizen of the State of California.

9.     Defendant Bruce Edwards ("Edwards") has been a director of the Company since 2009.  He is a citizen of the State of California.

10.     Defendant Kimberly Alexy ("Alexy") has been a director of the Company since 2009.  She is a citizen of the State of California.

11.     Defendant Donovan Huennekens ("Huennekens") has been a director of the Company since 1969.  He is a citizen of the State of California.

12.     Defendant Maureen Kindel ("Kindel") has been a director of the Company since 1997.  She is a citizen of the State of California.

- 3 -

13.    Defendant Richard Newman ("Newman") has been a director of the Company since 1991. He is a citizen of the State of California.

14.    Defendant Linda Griego ("Griego") has been a director of the Company since 2006. He is a citizen of the State of California.

15.    Defendant William Jones ("Jones") has been a director of the Company since 2004. He is a citizen of the State of California.

16.    Defendant Thomas Iino ("Iino") has been a director of the Company since 2007. He is a citizen of the State of California.

17.    Defendants referenced in ¶¶ 7 through 16 are collectively referred to as Individual Defendants and/or the SouthWest Water Board. As officers and/or directors of SouthWest Water, the Individual Defendants have a fiduciary relationship with Plaintiffs and other public shareholders of SouthWest Water, and owe them the highest obligations of good faith, fair dealing, loyalty and due care.

18.    Defendant SW Merger Acquisition Corp. is a Delaware Corporation whose principal place of business is in Delaware, and is an entity controlled by institutional investors advised by J.P. Morgan Asset Management and Water Asset Management L.L.C.

19.    Defendant SW Merger Sub Corp. is a Delaware whose principal place of business is in Delaware, and is wholly owned by SW Merger Acquisition Corp. that was created for the purposes of effectuating the Proposed Transaction.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

20.    By reason of Individual Defendants' positions with the Company as officers and/or Directors, they are in a fiduciary relationship with Plaintiffs and the other public shareholders of SouthWest Water and owe them, as well as the Company, a duty of highest good faith, fair dealing, loyalty, and full, candid, adequate disclosure, as well as a duty to maximize shareholder value.

- 4 -

21.     Where the officers and/or Directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; (ii) a break up of the corporation's assets; or (iii) sale of the corporation, the Directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.   To comply diligently with their fiduciary duties, the Directors and/or officers may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     favors themselves, will discourage, or will inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits them from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the Directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

22.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as Directors and/or officers of SouthWest Water, are obligated to refrain from:

(a)     participating in any transaction where the Directors or officers' loyalties are divided;

(b)     participating in any transaction where the Directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

23.     Plaintiffs allege herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith and independence owed to Plaintiffs and other public shareholders of SouthWest Water, or are aiding and abetting others in violating those duties.

24.     Defendants also owe the Company's stockholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction, and particularly the fairness of the price offered for the stockholders' equity interest.  Defendants are knowingly or recklessly breaching their fiduciary duty of candor by failing to disclose all material information concerning the Proposed Transaction and/or aiding and abetting other Defendants' breaches.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

25.     In committing the wrongful acts alleged herein, each of the Defendants has pursued or joined in the pursuit of a common course of conduct and acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Defendants further aided and abetted and/or assisted each other in breach of their respective duties as herein alleged.

26.     During all relevant times hereto, the Defendants initiated a course of conduct which was designed to and did: (i) permit the Buyers to attempt to eliminate the public shareholders' equity interest in SouthWest Water pursuant to a defective sales process, and (ii) permit the Buyers to buy the Company for an unfair price. In furtherance of this plan, conspiracy, and course of conduct, Defendants took the actions as set forth herein.

27.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions, as particularized within this document, to substantially assist the commission of the wrongdoing complained of, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

- 6 -

wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing. The Defendants' acts of aiding and abetting include, *inter alia*, the acts each of them are alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this action on their own behalf and as a class action on behalf of all owners of SouthWest Water common stock and their successors in interest, except Defendants and their affiliates (the "Class").

29.     This action is properly maintainable as a class action for the following reasons:

(a)     the Class is so numerous that joinder of all members is impracticable. As of March 15, 2010, SouthWest Water has approximately 24.88 million shares outstanding.

(b)     questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Have the Individual Defendants misrepresented and omitted material facts in violation of Section 14(a) of the Exchange Act;

(ii)     whether the Individual Defendants breached their fiduciary duties owed by them to Plaintiffs and the others members of the Class;

(iii)     whether the Individual Defendants, in connection with the Proposed Transaction of SouthWest Water by the Buyers, are pursuing a course of conduct that does not maximize SouthWest Water's value, in violation of their fiduciary duties;

(iv)     whether the Individual Defendants misrepresented and omitted material facts, in violation of their fiduciary duties owed by them to Plaintiffs and the other members of the Class;

- 7 -

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

(v)     whether SouthWest Water and Buyers aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(vi)    whether the Class is entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

(c)     Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature.

(d)     Plaintiffs' claims are typical of those of the other members of the Class.

(e)     Plaintiffs have no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and the risk of establishing incompatible standards of conduct for Defendants.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## SUBSTANTIVE ALLEGATIONS

30.     SouthWest Water provides water and wastewater related services principally in the United States. The company offers operations, maintenance, and management services, including water production, treatment, and distribution, wastewater collection and treatment, customer services, and utility infrastructure construction management. The Company owns water and wastewater utilities located in California, Alabama, Mississippi, and Texas, which primarily serve residential customers. As of November 9, 2009, the Company owned 131 systems and operated hundreds more under contract to cities, utility districts and private companies.

31.     The Company has been recognized for its outstanding service and for providing top-notch water systems on numerous occasions. For example, on August 20, 2009, the Company

- 8 -

announced that it received perfect scores in a state inspection of its water systems in the City of Gulfport, Mississippi. As stated in the press release:

> LOS ANGELES--(BUSINESS WIRE)--August 20, 2009--SouthWest Water Company (NASDAQ:SWWC) today announced that four City of Gulfport, Mississippi, water systems that are operated and maintained by SouthWest Water are perfect, according to the Mississippi State Department of Health. After a rigorous inspection and evaluation of five systems, four earned a perfect score of 5.0 and one earned the second-highest rating of 4.7.

> "There is a lot that goes into making our water not only safe to drink, but making it the best quality water possible," said George Schloegel, the mayor of Gulfport. "We could not be more pleased with these results and thank SouthWest Water for their professional operation of our systems."

> * * *

> "Gulfport is the second largest city in Mississippi and getting a perfect score on multiple drinking water systems that serve this many residents is a rare and major accomplishment," said Jeff Blackwell, SouthWest Water's project manager in Gulfport. "Fulfilling the state department's stringent evaluation standards requires great operational focus and expertise. We are committed to providing the highest level of service to Gulfport's residents and we are proud that these results show how our efforts are paying off for the City."

32.     On September 10, 2009, the Company announced a 10-year renewal contract with Horizon Regional Municipal Utility District ("HRMUD") in Horizon City, Texas, under which SouthWest Water will continue to operate and maintain HRMUD's water and wastewater systems and manage its meter reading, billing, and collections. As stated in the press release announcing the contract:

> "SouthWest Water does an excellent job serving our community," said HRMUD President John Navidomskis. "We are happy to renew this contract and ensure the continuity of this quality service."

> "We are proud of the support and confidence that the HRMUD's officials have shown in us," said Jim Brown, Managing Director of SouthWest Water's Texas MUD Services division. "We look forward to continuing to provide outstanding service to the residents of Horizon City."

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

33.     On October 23, 2009, the Company announced that its board of directors had raised the company's quarterly cash dividend on its common stock from $0.025 per share to $0.05 per share, representing a 100% increase. In the press release announcing the dividends, Mark Swatek, SouthWest Water chief executive officer, said, "Today's action *reflects our board's confidence in the underlying performance of the company and our long-term business outlook*."

34.     On November 9, 2009, the Company announced its financial results for the third quarter ending September 30, 2009. The Company announced that operating revenue increased by 3%, to $59.0 million, for the 2009 third quarter, compared to $57.5 million in the third quarter of 2008. In addition, the Company reported that adjusted income from continuing operations was $1.1 million, or $0.05 per diluted share, compared with adjusted income from continuing operations of $0.1 million, or $0.00 per diluted share, for the third quarter of 2008. As stated by Defendant Swatek, SouthWest Water president and chief executive officer, in the press release announcing the financial results, "We are pleased that our revenue continues to grow as a result of the regulatory relief we have been granted in our owned utilities and the increased project work our Texas MUD operations have completed this year versus last. *As we continue to hone in on areas where we can make a positive impact on costs, we also expect to see continued improvement in our operating efficiencies*."

35.     On February 9, 2010, the Company announced that it received high scores from the Mississippi State Department of Health for three wells the company operates for the Pearl River County Utility Authority (PRCUA). The PRCUA coordinates the delivery of water, wastewater and storm water services for residents of Mississippi's Pearl River County. As stated by PRCUA Operations Manager Cliff Diamond in the press release announcing the achievement, "SouthWest Water's hard work has greatly improved our systems. Their emergency response time has been

- 10 -

excellent, and the Authority is pleased with the professional service and commitment they have shown us."

36.     Despite its recent performance and bright outlook, the Company agreed to enter into the Proposed Transaction. In a press release dated March 3, 2010, the Company announced that it had entered into a merger agreement with the Buyers, stating:

> LOS ANGELES, California, March 3, 2010– SouthWest Water Company (NASDAQ:SWWC) today announced it has entered into a definitive merger agreement to be acquired for approximately $275 million in cash, or $11.00 per share, by institutional investors advised by J.P. Morgan Asset Management and Water Asset Management L.L.C. (the partnership).

> * * *

> Andrew Walters, vice president of J.P. Morgan Asset Management's Infrastructure Investments Group, said, "We believe that SouthWest Water is an excellent, long-term investment for the partnership. We look forward to working with SouthWest Water's experienced management and talented workforce to deliver cost effective customer service to a growing customer base over time. A seamless transition and continuity are high priorities for us and we look forward to continuing to work with management and employees in the company's service territories to ensure continued responsiveness to needs of local customers and communities."

> * * *

> "SouthWest Water has made a significant commitment to improve the water service infrastructure in the regions it serves, and, in turn, enhance service and reliability to its customers," said Disque Deane Jr. of Water Asset Management. "Our partnership is committed to funding necessary maintenance and upgrades over the long-term".

> * * *

> Prior to the closing of the acquisition, members of the partnership will invest approximately $16 million in 2.7 million newly issued SouthWest Water shares under a private placement, priced at $6.00 per share. SouthWest Water intends to use the proceeds to assist the financing of ongoing utility infrastructure investments. As the offer and sale of the shares of common stock will not be registered under the Securities Act of 1933 or applicable state securities laws, the shares of common stock may not be offered or sold in the United States absent registration or an applicable exemption from such registration requirements. This document is being issued pursuant to and in accordance with Rule 135c under the Securities Act and does not constitute an offer to sell or a solicitation of an offer to buy the shares of common stock.

- 11 -

37.     Given the Company's recent performance and future prospects, the consideration shareholders are to receive is inadequate. In fact, prior to the recession and the general financial turmoil that began in late 2008, SouthWest Water's stock had been trading as high as $13.40 per share in September, 2008. Accordingly, the Buyers are picking up SouthWest Water at the most opportune time, a time when SouthWest Water is poised for growth and its stock price is trading at a huge discount to its intrinsic value.

38.     In addition, on March 3, 2010, the Company filed a Form 8-K with the United States Securities and Exchange Commission ("SEC"), wherein it disclosed the operating Agreement and Plan of Merger for the Proposed Transaction (the "Merger Agreement"). As part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

39.     By way of example, §6.4(a) of the Merger Agreement includes a "no solicitation" provision barring the Board and any Company personnel from attempting to procure a price in excess of the amount offered by the Buyers. This section also demands that the Company terminate any and all prior or ongoing discussions with other potential suitors. Despite the fact that they have locked up the Company and bound it not to solicit alternative bids, the Merger Agreement provides other ways that guarantee that the only suitor will be the Buyers.

40.     Pursuant to §6.4 of the Merger Agreement, should an unsolicited bidder arrive on the scene, the Company must notify the Buyers of the bidder's offer. Thereafter, should the Board determine that the unsolicited offer is superior, the Buyers are granted five days to amend the terms of the Merger Agreement to make a counter-offer so that the competing bid no longer constitutes a superior proposal. The Buyers are able to match the unsolicited offer because they are granted

- 12 -

1   unfettered access to the unsolicited offer in its entirety, eliminating any leverage that the Company

2   has in receiving the unsolicited offer.

3       41.     In other words, the Merger Agreement gives the Buyers access to any rival bidder's

4   information and allows the Buyers a free right to top any superior offer.   Accordingly, no rival

5   bidder is likely to emerge and act as a stalking horse for the Buyers because the Merger Agreement

6   unfairly assures that any "auction" will favor the Buyers and piggy-back upon the due diligence of

7   the foreclosed second bidder.

8

9       42.     In addition, the Merger Agreement provides that a termination fee of 3% of the

10  Proposed Transaction consideration be paid to Buyers by SouthWest Water if the Company decides

11  to pursue said other offer, thereby essentially requiring the alternate bidder to agree to pay a naked

12  premium for the right to provide the shareholders with a superior offer.

13      43.     Ultimately, these preclusive deal protection provisions illegally restrain the

14  Company's ability to solicit or engage in negotiations with any third party regarding a proposal to

15  acquire all or a significant interest in the Company.   The circumstances under which the Board may

16  respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or

17

18  would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to

19  provide an effective "fiduciary out" under the circumstances.   Likewise, these provisions also

20  foreclose any likely alternate bidder from providing the needed market check of the Buyers'

21  inadequate offer price.

22
                    **THE MATERIALLY MISLEADING AND INCOMPLETE**
23                                 **PROXY STATEMENT**

24      44.     On April 23, 2010, the Company filed a Schedule 14A Proxy Statement (the

25  "Proxy") with the SEC in connection with the Proposed Transaction.

26

27

28
                                          - 13 -

45.     The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to vote in favor of the Proposed Transaction.

46.     For example, the Proxy completely fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by Wells Fargo Securities, LLC ("Wells Fargo"), the Company's financial advisor, so that shareholders can properly assess the credibility of the various analyses performed by Wells Fargo and relied upon by the Board in recommending the Proposed Transaction.  In particular, the Proxy is deficient and should provide, *inter alia*, the following:

     (i)     The financial projections and forecasts of the Company relied upon by Wells Fargo in rendering its fairness opinion.

     (ii)     The criteria utilized by Wells Fargo to determine which companies were comparable to the Company that were used in the *Comparable Public Companies Analysis*.

     (iii)     The multiples observed for each company in the *Comparable Public Companies Analysis*, as well as the Company's 2010E EBITDA, 2011E EBITDA, 2010E EPS, and 2011E EPS used in the analysis.

     (iv)     The "range of multiples" applied to the Company's corresponding financial data in the *Comparable Public Companies Analysis*, the criteria used to select that range, and the implied per share equity range calculated for each of the 4 multiples analyzed in the analysis.

     (v)     Information regarding the use (or lack of use) of a control premium in the *Comparable Public Companies Analysis*, i.e. whether Wells Fargo applied a control premium when calculating the implied per share value of SouthWest Water common stock in the analysis, and if so to provide details regarding its calculation, and if not, the reasons for not doing so.

     (vi)     The criteria utilized by Wells Fargo to determine which companies had similar "results, market size, or operations" to the Company that were used in the *Selected Transactions Analysis*.

     (vii)     The transaction value and EV/One-year forward EBITDA multiples observed for each company in the *Selected Transactions Analysis*, as

- 14 -

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

well as the Company's EBITDA for the 12-month period ending December 31, 2011 used in the analysis.

(viii)   The criteria used to select the 8.5x to10.0x range of multiples used in the *Selected Transactions Analysis*.

(ix)   The criteria used to select the 16.0x to 19.0x range of multiples used in the *Illustrative Present Value of Future Share Price Analysis*.

(x)   The definition of free cash flows used in the *Illustrative Discounted Cash Flow Analysis*, the criteria used to select the 9.0x to 10.0x range of EBITDA multiples used in the analysis, and the key inputs used to calculate the Company's weighted average cost of capital used in the analysis.

(xi)   The transaction value and premiums observed for each transaction in the *Premiums Paid Analysis*.

47.   Further, the Proxy omits material information regarding the financial advisor retained in connection with the Proposed Transaction.  Specifically, the Proxy fails to inform the shareholders the (i) criteria used for selecting Wells Fargo including whether other investment advisors were considered, (ii) the "modifications" to Wells Fargo's engagement with the Company discussed by the special committee on February 9, 2009, (iii) the amount of fees SouthWest Water has agreed to pay Wells Fargo for its services in connection with the Proposed Transaction, and (iv) the services Wells Fargo have provided to the Company and Buyers in the past and the amount of compensation received for such services.  It is material for shareholders to be informed as to why the Board selected Wells Fargo as well as any other financial and economic interests Wells Fargo or its clients have in the Proposed Transaction or in the parties involved that could be perceived or create a conflict of interest.

48.   The Proxy also fails to disclose material information concerning the financial benefits received by certain directors and officers in the Proposed Transaction. In particular, the Proxy states that "upon consummation of the merger, 103,306 shares of restricted stock (of which 48,536 shares are performance contingent restricted stock) held by our executive officers will

- 15 -

become fully vested and will be converted into the right to receive $11.00 per share, or approximately $1,136,000 in the aggregate," but fails to disclose how many shares of stock are held by each executive officer individually.  In addition, the Proxy states that the Company entered into "retention agreements with certain members of its management team" to help with successful completion of the merger pursuant to which such members will become provided with the payment of a bonus if the individual remains employed by the Company for 90 days following consummation of the Proposed Transaction. The Proxy should disclose which officers signed retention agreements and the amount of the bonus to be received.

49.     The Proxy also fails to disclose material information concerning the value of the Company's individual operations and the indications of interest received for certain operations.  In particular, the Proxy states that on February 24, 2010, "SB-D submitted a proposal to acquire our California utility for cash and SB-E submitted a proposal to acquire our regulated Texas assets for cash," and that the Special Committee determined not to concentrate on those proposals because "the consideration to be received by our stockholders from these transactions appeared to be far below that which would be received from either of the other two proposals."  The Proxy must disclose the value of each of these two proposals, and what analyses the Board relied upon in assessing the value of the Company's California utility and its Texas assets. In addition, the Proxy states on April 8, 2009, Wells Fargo provided the Board with a sum-of-the-parts analysis to describe to the Board how "the values of the various operations might be unlocked in one or more asset sales and whether the sum of the value of the parts of the enterprise might be greater than the value of the whole from the stockholders' perspective." The Proxy should disclose the results of such analysis, especially in light of SB-D's and SB-E's indications of interest received later in the sales process.

50.     The Proxy also fails to describe material information concerning the sales process conducted by the Company, including the criteria used to select potential partners, the discussions

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

1   and negotiations held with such parties, and the values of the offers received.  For example, the

2   Proxy:

3          (i)    Fails to disclose the value of the non-binding indication of interest
                  received from SB-A on January 16, 2009.
4

5          (ii)   Fails to disclose how many parties were on the list prepared by Wells
                  Fargo that was reviewed by the special committee on February 17,
6                 2009, the process used by Wells Fargo to select parties to be included
                  in the list, and the decisions with respect to the parties on the list
7                 made by the special committee.

8          (iii)  Fails to disclose the criteria used by the special committee on
                  February 23, 2009 to determine which bidders Wells Fargo should
9                 contact.

10
           (iv)   Fails to disclose how FB-C learned of the sales process, i.e. whether
11                FB-C was one of the original 11 parties contacted by Wells Fargo
                  between March 2, 2009 through March 4, 2009, and if not how it
12                became aware that Wells Fargo was conducting a sales process.

13
           (v)    Fails to disclose the values of the 7 indications of interest received on
14                April 10, 2009.

15         (vi)   Is ambiguous as to which parties the Special Committee admitted into
                  the second round of the bidding process on April 16, 2009 and needs
16                to disclose which parties were not admitted and the reasons those
                  parties were not admitted.
17

18         (vii)  Fails to disclose the reasons FB-C withdrew from the process on July
                  16, 2009.
19

20         (viii) Fails to disclose how IIF LLC learned of the sales process, i.e.
                  whether IIF LLC was one of the original 11 parties contacted by
21                Wells Fargo between March 2, 2009 through March 4, 2009, and if
                  not how it became aware that Wells Fargo was conducting a sales
22                process.

23         (ix)   Fails to disclose the value of FB-B's indication of interest to purchase
                  the Company on July 20, 2009 and the value of its revised indication
24                of interest on November 2, 2009.

25
           (x)    Fails to disclose the reasons the special committee determined to
26                invite only seven parties to submit indications of interest on
                  November 23, 2009, and did not determine to solicit interest from
27                additional parties, including the two strategic buyers that submitted an
                  unsolicited interest on July 16, 2009.
28

- 17 -

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

(xi)   Fails to disclose the values of the 7 indications of interest received on December 9, 2009, and the value of SB-F's indication of interest received on December 10, 2009.

(xii)   Fails to disclose the reasons SB-A was not allowed to continue with due diligence on December 16, 2009.

(xiii)   Fails to disclose the reasons SB-F withdrew from the bidding process on February 3, 2010.

(xiv)   Fails to disclose the reasons SB-B and SB-C determined not to submit proposals on February 24, 2010.

(xv)   Fails to disclose the "potential benefit to the Company from the proposed equity investments" by FB-B and IIF LLC/WAM discussed by the special committee on February 26, 2010.

(xvi)   Fails to disclose the value that FB-B increased its proposed price to on February 28, 2010.

It is absolutely necessary for shareholders to receive a Proxy that provides all material disclosures related to the sales process in order for shareholders to be able to cast a fully informed decision regarding the Proposed Transaction.

51.   The Proxy also fails to disclose material information concerning the reasons the Board determined in late July 2009 to delay the sales process including the "other operational issues" the Company needed to deal with, the "potential uncertainties in the bid process" resulting from these issues, and the "effect the process was having on the business". In addition, the Proxy should disclose "the potential impact of a delay on the process and potential bidder reaction" that was discussed between Wells Fargo, the Board and the special committee, and what the special committee determined with respect to "whether there was a viable alternative to delaying or terminating the process" that was discussed on July 29, 2009. Lastly, the Proxy should disclose why waiting until the Company filed its third quarter Form 10-Q to resume the bidding process was the best alternative among all those discussed.

- 18 -

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

52.    The Proxy also fails to disclose material information concerning the special committees formed by the Board throughout the sales process, including a) the members of the special committee that was formed on November 5, 2007, b) the criteria used to select Geoffrey Ketcham, and Defendants Iino and Jones to serve on the special committee formed by the Board on January 21, 2009 as well as the reasons Defendant Newman, the chair of the late-2007 special committee was not originally included as a member of this committee, c)  the criteria used to select Defendant Huennekens to replace Ketcham on the special committee on January 26, 2009, and d) the reasons Edwards and Newman were added as members of the special committee on October 23, 2009 and the reasons Huennekens was removed.

53.    Lastly, the Proxy further neglects to provide shareholders with sufficient information to evaluate the pros and cons associated with the other strategic alternatives, other than the sale of the Company, including the values and risks associated with SouthWest Water remaining as a stand-alone Company -- information which is vital to shareholders in deciding how to vote regarding the Proposed Transaction. In particular, the Proxy should disclose the "strategic alternatives available to the Company" that were presented by Wells Fargo to the Board and/or special committee on February 4 and 12, 2009, "the potential alternative transactions available to the Company" discussed by the special committee on February 23, 2009, and "the potential strategic alternatives available to the Company" presented by Wells Fargo to special committee on April 16, 2009, and the reasons such alternatives were not pursued.

54.    Accordingly, Plaintiffs seek injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

### CLAIM FOR RELIEF

### COUNT I
**Breach of Fiduciary Duty—Failure to Maximize Shareholder Value
(Against All Individual Defendants)**

- 19 -

55.     Plaintiffs repeat all previous allegations as if set forth in full herein.

56.     As Directors of SouthWest Water, the Individual Defendants stand in a fiduciary relationship to Plaintiffs and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty and care.  The Individual Defendants' recommendation of the Proposed Transaction will result in a change of control of the Company, which imposes heightened fiduciary responsibilities to maximize SouthWest Water's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

57.     As discussed herein, the Individual Defendants have breached their fiduciary duties to SouthWest Water shareholders by failing to engage in an honest and fair sale process.

58.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiffs and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of SouthWest Water's assets and will be prevented from benefiting from a value-maximizing transaction.

59.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiffs and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

60.     Plaintiffs and the Class have no adequate remedy at law.

**COUNT II**
**Breach of Fiduciary Duty -- Disclosure**
**(Against Individual Defendants)**

61.     Plaintiffs repeat all previous allegations as if set forth in full herein.

62.     The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiffs and the Class all information material to the decisions confronting SouthWest Water's shareholders.

- 20 -

63.     As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

64.     As a result, Plaintiffs and the Class members are being harmed irreparably.

65.     Plaintiffs and the Class have no adequate remedy at law.

## COUNT III

### Aiding and Abetting
### (Against SouthWest Water and the Buyers)

66.     Plaintiffs repeat all previous allegations as if set forth in full herein.

67.     As alleged in more detail above, SouthWest Water and the Buyers are well aware that the Individual Defendants have not sought to obtain the best available transaction for the Company's public shareholders.  Defendants SouthWest Water and the Buyers aided and abetted the Individual Defendants' breaches of fiduciary duties.

68.     As a result, Plaintiffs and the Class members are being harmed.

69.     Plaintiffs and the Class have no adequate remedy at law.

## COUNT IV

### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### (Against Individual Defendants)

70.     Plaintiffs repeat all previous allegations as if set forth in full herein.

71.     Defendants have issued the Proxy with the intention of soliciting shareholder support of the Proposed Transaction.

72.     Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

- 21 -

73.     Specifically, the Proxy violates the Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

74.     The misrepresentations and omissions in the Proxy are material to Plaintiffs and the Class, and Plaintiffs and the Class will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly and severally, as follows:

(a)     declaring this action to be a class action and certifying Plaintiffs as the Class representatives and their counsel as Class counsel;

(b)     declaring that the Proxy contained misleading statements of material fact and omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and that SouthWest Water and the Individual Defendants violated said provisions;

(c)     enjoining, preliminarily and permanently, the Proposed Transaction;

(d)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiffs and the Class rescissory damages;

(e)     directing that Defendants account to Plaintiffs and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(f)     awarding Plaintiffs the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiffs' attorneys and experts; and

- 22 -

1      (g)      granting Plaintiffs and the other members of the Class such further relief as

2  the Court deems just and proper.

3

4  DATED: April 29, 2010                **LEVI & KORSINSKY, LLP**

5

6                                                              /s/      *David E. Bower*

7                                                  _____
                                                           DAVID E. BOWER
                                               600 Corporate Pointe, Suite 1170

8                                              Culver City, CA  90230-7600

9                                              **LEVI & KORSINSKY, LLP**

10                                             Joseph Levi (to be admitted *pro hac vice*)
                                               Juan E. Monteverde (to be admitted *pro hac vice*)

11                                             30 Broad Street, 15th Floor
                                               New York, NY  10004

12                                             Tel: 212-363-7500
                                               Fax: 212-363-7171

13                                             Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY